**ATLANTIC COAST LINE R. CO. v. BAHNSEN, State Veterinarian of Georgia.**

(District Court, N. D. Georgia. July 7, 1924.)

No. 258.

Animals ⬡⟳30—State regulation for prevention of importation of cattle ticks held unreasonable and invalid in part.

An order made by the state veterinarian of Georgia, under legislative authority, prohibiting the movement of watermelons in cars bedded with pine straw, from Florida, which was under federal quarantine for cattle ticks, into or through Georgia, the purpose being to prevent that state, which was practically free from ticks, from becoming infested from the straw, *held* within the police power of the state, and valid so far as reasonable, but unreasonable in so far as it prohibited the movement of cars through the state into other states, and its enforcement enjoined to that extent on condition that the cars be lined with paper and boards placed across the bottoms of the doors to prevent the escape of straw; it being shown that enforcement of the order as made would cause irreparable loss by preventing shipment of a large part of the melon crop of Florida.

In Equity. Suit by the Atlantic Coast Line Railroad Company against Peter F. Bahnsen, State Veterinarian of the State of Georgia,

wherein other railroad companies intervened. On motion for preliminary injunction. Granted subject to conditions.

The Atlantic Coast Line Railroad Company filed its bill to enjoin the enforcement of an order of the state veterinarian of Georgia. Interventions as parties plaintiff were allowed filed in behalf of other railroad companies. At the hearing for interlocutory injunction, before three judges, the evidence tended to show that the state of Georgia, with the exception of three counties, had been freed of cattle ticks, but recently reinfestation had occurred at several points, in some instances from pine straw thrown out of cars in which watermelons had been shipped; that the whole of Northern and Central Florida was infested with ticks and under federal quarantine; that pine straw is used as a bedding over the floor of cars in which watermelons are shipped, which is generally not removed at destination but must be thrown out when the cars are to be used again; that the Florida melon crop of many thousands of cars is now moving, cannot be delayed, and that other suitable bedding cannot be produced or obtained on short notice, so that enforcement of the order would mean the loss of a large part of the crop, which must move through Georgia to reach destination.

Alston, Alston, Foster & Moise, of Atlanta, Ga., for plaintiff.

Randolph & Parker, of Atlanta, Ga., for intervener Seaboard Air Line R. Co.

J. E. Hall, of Macon, Ga., for intervener Georgia, S. & F. R. Co.

Geo. M. Napier, Atty. Gen., and W. L. Bryan, of Donaldsonville, Ga., for defendant.

Before BRYAN, Circuit Judge, and BARRETT and SIBLEY, District Judges.

SIBLEY, District Judge (after stating the facts as above). The assailed order reads:

"Effective on and after June 9, 1924. To prevent the reinfestation of tick free areas in the state of Georgia through bedding or packing material originating in areas infested with and quarantined on account of cattle fever tick infestation it is hereby ordered that the shipment or movement of watermelons originating in the tick infested and quarantined areas of Florida or any other states bedded with pine straw, into or through the state of Georgia is prohibited. By order of Peter F. Bahnsen, State Veterinarian."

The Georgia act of 1910—Park's Code, § 2082 (b)—states:

"The duties of the state veterinarian shall be to investigate and take proper measures for the control and suppression of all contagious and infectious diseases among the domesticated animals within the state, under such rules and regulations as may be promulgated by him and approved by the Commissioner of Agriculture of Georgia."

This general power sufficiently authorizes the making of a regulation touching straw or other materials infested with ticks. The effectiveness of the regulation, however, was made to depend on the approval of the Secretary of Agriculture. The regulation here in question became effective, therefore, only on such approval, June 21, 1924, the day this bill was filed.

Though the order is in terms a direct regulation of the shipment of melons in interstate commerce, its real purpose is plainly not to restrict commerce as such, but to prevent the importation of cattle ticks into Georgia. It rests, therefore, not on any right of the state to regulate commerce where Congress has not regulated, but on the police power to protect property within the state from disease and destruction from without, a power as surely reserved to the states by the Constitution as the power to regulate commerce among the states is granted by it to the Congress. The right of the state to act depends here on no omission of Congress, but is original and independent. Should the state, in the exercise of its police power, act upon a subject of interstate commerce in a manner irreconcilable with some regulation of Congress affecting the same subject, a question of prevalence would arise.

But such is not this case. Large powers have been given by Congress, by Act May 29, 1884, 23 Stat. 31 (Comp. St. §§ 838, 850, 8690–8697), Act Feb. 2, 1903, 32 Stat. 791 (Comp. St. §§ 8698–8700) and Act March 3, 1905, 33 Stat. 1264 (Comp. St. §§ 8701–8705, 10230), to the Secretary of Agriculture and the Bureau of Animal Industry touching the control of communicable diseases in cattle in interstate commerce. But the general purpose of this legislation to prevent the transmission of disease in such commerce consists with the state action under examination. No specific regulation of the Secretary of Agriculture applicable to the shipment of pine straw from infested areas has been pointed out. The mere absence of such does not make a case of conflict. The transmission of ticks in pine straw from an infested area is sufficiently likely to render the import into the state of such pine straw a fair object for the exercise of the police power. Nevertheless when interstate commerce is thus directly interfered with by the police power, a proper respect for the general authority of Congress over the subject requires that the police regulation appear to be really necessary, reasonable in its requirements and reaching no further than the necessity fairly extends.

Under this principle we think the order unreasonable, in so far as it prohibits transportation through the state of melons bedded in pine straw. It may be that there is no practicable method of inspecting, at the state line, pine straw covered with melons, and that the exact origin of pine straw cannot be safely traced, and that it is reasonable to conclude that all pine straw moving from an infested area is likely to contain ticks or their eggs. The evidence shows that infestation has been caused by access of cattle to pine straw thrown out of cars, and this experience might justify a prohibition against the introduction by carriers of cars for loading in Georgia which have not been cleaned and disinfected, as is required by existing regulations as to cars for live stock. But the likelihood of straw or ticks escaping from paper-lined cars, such as are used for shipping melons, if protected at the doors with boards, as proposed, seems slight. None is testified to have been observed during the time the restraining order in this case has been effective.

In the light of present experience, we think that no reasonable necessity appears suddenly to prohibit the transport of this perishable product

through the state, notwithstanding these precautions. While suffering the order to stand as to melons to be unloaded in the state, we will grant an injunction against the enforcement of it as applied to shipments through the state to points beyond, on condition that the cars used are paper-lined and have a board, at least six inches high, fastened across each door, next to the floor, so as to prevent the escape of straw.