## MINTZ ET AL. v. BALDWIN, COMMISSIONER OF AGRICULTURE AND MARKETS OF NEW YORK

No. 760. Argued April 10, 1933.—Decided May 8, 1933

*Mr. J. E. Messerschmidt*, Assistant Attorney General of Wisconsin, with whom *Messrs. James E. Finnegan*, Attorney General, and *R. M. Orchard*, Assistant Attorney General, were on the brief, for appellants.

*Mr. Henry S. Manley*, with whom *Messers John J. Bennett, Jr.*, Attorney General of New York, and *Wendell P. Brown*, Assistant Attorney General, were on the brief, for appellee.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Plaintiffs have a large and valuable business in the raising, and in the sale and transportation from Wisconsin to New York, of cattle for dairy and breeding purposes. Defendant, acting under state statutes, made and is enforcing an order [1] to guard against Bang's disease,

---

[1] It appearing that Bang's disease, an infectious and communicable disease affecting domestic animals, exists outside of the state of New York in areas from which cattle are or may be imported into this state,

Now, therefore, to prevent the bringing into this state of such disease, and in pursuance of the authority conferred upon me by Sections 72 and 74 of the Agriculture and Markets Law, I do hereby order that all bovine animals coming into the State of New York shall comply with the following requirements:

All cattle over six months of age imported for dairy or breeding purposes shall come directly from herds certified to be free from Bang's disease by the chief livestock sanitary official by whatever name known of the country, province or state of origin. Such animals at the time of import must be accompanied by a certificate authenticated by such livestock sanitary official showing the name and address of the laboratory or person making the last blood test on such herd with a complete statement of the results of such test on the animals so imported. Such certificate shall describe each animal in such manner as to enable its identification by ear tag number, name and registration number in the case of pure breds and ear tag number in the case of grades. Such certificate shall include or be accompanied by the certificate above mentioned as to freedom of the herd from Bang's disease. A duplicate of such authenticated certificate or

bovine infectious abortion. The order requires that the cattle imported into New York for such purposes and also the herds from which they come shall be certified to be free from that disease by the chief sanitary official of the State of origin and that each shipment be accompanied by such a certificate.

Plaintiffs shipped 20 head from Wisconsin for delivery to one Bartlett in New York. The animals were accompanied by a certificate which was sufficient as to them, but there was nothing to show the freedom from Bang's disease of the herd or herds from which they came. For that reason defendant refused to permit them to be delivered, and so plaintiffs were compelled to take them out of New York.

Plaintiffs brought this suit for a temporary and perpetual injunction to restrain enforcement of the order. Their claim, so far as here material, is that the order is repugnant to the commerce clause because in conflict with federal statutes relating to interstate transportation of livestock. Cattle Contagious Diseases Acts: February 2, 1903, 32 Stat. 791, 21 U.S.C., §§ 111, 120–122; March 3, 1905, 33 Stat. 1264, 18 U.S.C., § 118, 21 U.S.C., §§ 123–127.[2] Their application for a temporary injunction was brought on for hearing before a specially constituted court. 28 U.S.C., § 380. Defendant answered and, upon stipulation of the parties, plaintiffs' motion for interlocutory de-

---

certificates must be filed with the Department of Agriculture and Markets, Albany, N.Y., by the consignee at the time the shipment is received, unless such duplicate has previously been filed by the consignor.

This order shall not apply to the following classes of bovine animals:

(a) Cattle for immediate slaughter, consigned to the public stockyards.

(b) Steers and beef type cattle for feeding and grazing purposes.

[2] Both Acts were amended by the Act of February 7, 1928, 45 Stat. 59.

cree and defendant's motion to dismiss the complaint were submitted upon the pleadings, the affidavit of one of the plaintiffs, the affidavit of defendant and affidavits of others in his behalf. Temporary injunction was denied and the bill was dismissed.

The court made special findings of fact which include the following: Bang's disease prevails throughout the United States and is one of the greatest limiting factors, both as to reproduction and milk yield. Undulant fever may be caused by the disease germs when introduced into the human body by drinking raw milk of an infected cow. The disease may generally be diagnosed about 60 days after infection though the time may be considerably longer. Two blood tests are customarily made to detect the disease but they may not disclose it in the incubative stage. A substantial percentage of cattle imported into New York under certificate that they have passed tests for the disease are shown to have been infected. There is a body of expert opinion that such cattle should only be admitted when certified to have come from a clean herd, and that by such a safeguard danger of infection would be greatly lessened. The disease is exceedingly infectious and the defendant concluded that in order to protect herd owners and milk consumers he should require a certificate not only that imported cattle showed no infection but that they came from herds free from disease. This resulted in the order. By reason of danger of infection from the disease, many States of the Union have imposed restrictions upon the admission of cattle. The Federal Department of Agriculture, November 15, 1932, by letter to defendant declared that the Department had issued no quarantine or regulations pertaining to Bang's disease and that its policy for the present is to leave the control with the various States.

The order is an inspection measure. Undoubtedly it was promulgated in good faith and is appropriate for the

prevention of further spread of the disease among dairy cattle and to safeguard public health. It cannot be maintained therefore that the order so unnecessarily burdens interstate transportation as to contravene the commerce clause. *Gibbons* v. *Ogden,* 9 Wheat. 1, 203, 204; *Minnesota Rate Cases,* 230 U.S. 352, 402, 406; *Reid* v. *Colorado,* 187 U.S. 137, 151, 152; *Railroad Co.* v. *Husen,* 95 U.S. 465; *Henderson* v. *Mayor,* 92 U.S. 259, 268. Unless limited by the exercise of federal authority under the commerce clause, the State has power to make and enforce the order. The purpose of Congress to supersede or exclude state action against the ravages of the disease is not lightly to be inferred. The intention so to do must definitely and clearly appear. *Atchison, T. & S. F. Ry. Co.* v. *Railroad Comm'n,* 283 U.S. 380, 391; *Carey* v. *South Dakota,* 250 U.S. 118, 122; *Savage* v. *Jones,* 225 U.S. 501, 533; *Missouri, Kansas & Texas Ry. Co.* v. *Haber,* 169 U.S. 613, 623.

Plaintiffs' contention that the order is in conflict with the Act of March 3, 1905, is groundless. That Act applies only to shipments from quarantined districts that it authorizes the Secretary to establish. Plaintiffs' shipments are not made from such a district.

Examination of the Act of 1903 is necessary. It is a measure intended to enable the Secretary to prevent the spread of disease among cattle and other livestock. He is authorized and directed from time to time to establish such rules and regulations concerning interstate transportation from any place " where he may have reason to believe such diseases may exist . . . and all such rules and regulations shall have the force of law." " Whenever any inspector or assistant inspector of the Bureau of Animal Industry shall issue a certificate showing that such officer had inspected any cattle . . . which were about to be shipped . . . from such locality . . . and

had found them free from . . . communicable disease, such animals, so inspected and certified, may be shipped, driven, or transported from such place" in interstate commerce " without further inspection or the exaction of fees of any kind, except such as may at any time be ordered or exacted by the Secretary of Agriculture . . ." § 1; 21 U.S.C., §§ 120, 121.

Plaintiffs' cattle were not inspected by, and no certificate was issued under, federal authority. Unless the Act itself operates to prevent the enforcement of the order the suit was rightly dismissed. The express exclusion of state inspection extends only to cases where federal inspection has been made and certificate issued. The clause cannot be read to extend to other cases. The expression of purpose so to limit the exertion of state power strongly suggests that Congress intended not otherwise to trammel the enforcement of state quarantine measures. *United States* v. *Arredondo,* 6 Pet. 691, 725. Much weight is to be given to the practical interpretation of the Act by the Federal Department through its acquiescence in the enforcement of state measures to suppress Bang's disease. This case is governed by the principle on which rests the decision in *Asbell* v. *Kansas,* 209 U.S. 251. Defendant's order does not conflict with the Act of 1903.

Plaintiffs lean upon our decision in *Oregon-Washington R. & N. Co.* v. *Washington,* 270 U.S. 87. But, as concerns the question of conflict with state measures, the Act of 1903 is to be distinguished from the Plant Quarantine Act there interpreted. Act of August 20, 1912, 37 Stat. 315, as amended. 7 U.S.C., §§ 151–154, 156–165. In that case upon full consideration of the latter we said (p. 99): "All the sections look to a complete provision for quarantine against importation into the country and quarantine as between the States under the direction and supervision of the Secretary of Agriculture. . . . [p. 101.] It [the

Act] covers the whole field so far as the spread of the plant disease by interstate transportation can be affected and restrained . . . The state laws of quarantine that affect interstate commerce and this federal law cannot stand together. The relief sought to protect the different States, in so far as it depends on the regulation of interstate commerce, must be obtained through application to the Secretary of Agriculture."

Unlike the Act of 1903, the Plant Quarantine Act does not, by specification of the cases in which action under it shall be exclusive, disclose the intention of Congress that, subject to the limitations defined, state measures may be enforced. This difference is essential and controlling.

Plaintiffs' other contentions are not substantial and need not be specifically discussed.

*Affirmed.*