**CLOVERLEAF BUTTER CO. v. PATTERSON, Com'r of Agriculture, etc., et al.**

**No. 9647.**

Circuit Court of Appeals, Fifth Circuit.

Dec. 14, 1940.

Rehearing Denied Jan. 14, 1941.

Horace C. Wilkinson, Erle Pettus, and Victor H. Smith, all of Birmingham, Ala., for appellant.

Thomas S. Lawson and C. L. Rowe, both of Montgomery, Ala., for appellees.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Plaintiff is an Alabama Corporation engaged in Alabama under United States license, in the business of manufacturing for sale and selling in interstate and intrastate commerce, processed or renovated butter. Defendants are officers of the Department of Agriculture of the State of Alabama, and citizens of that state. The suit, invoking federal jurisdiction upon the ground that more than $8,000 is involved, and a right arising under a federal statute is being violated, was against defendants to restrain them from seizing or suspending from use, country or packing stock butter moving in interstate commerce into Alabama and into plaintiff's plant for renovating and processing there.

The claim was that by the congressional enactments [1] relating to processing · or renovating butter and the regulations [2] promulgated pursuant thereto, Congress has preempted the field of manufacture of processed or renovated butter in interstate commerce, and of inspection and regulation of packing stock butter, for use in such manufacture, tó the exclusion of the state of Alabama, its officers and agencies. It was alleged that the raw material called country and packing stock butter from

[1] Act, May 19, 1902, Chapter 784, 32 Stat. 193, as amended, Title 26, U.S.C. A.Int.Rev.Code, Chap. 16, Secs. 2320, 2321, 2322, 2323, 2324, 2325, 2326 and 2327. Particular reliance is on Section 2325. "The Secretary of Agriculture shall make all needful regulations for carrying this section and sections 2326 (c) and 2327 (b) into effect and shall cause to be ascertained and reported from time to time the quantity and quality of process or renovated butter manufactured, and the character and the condition of the material from which it is made. And he shall also have power to ascertain whether or not materials used in the manufacture of said process or renovated butter are deleterious to health or unwholesome in the finished product, and in case such deleterious or unwholesome materials are found to be used in product intended for exportation or shipment into other States or in courts of exportation or shipment he shall have power to confiscate the same. 53 Stat. 254."

[2] Bulletin known as Regulations No. 9, revised April, 1936 and again revised December 24, 1936, in a bulletin titled, "Regulations for carrying into effect the process or renovated butter act." Particularly relied on of these regulations is Bulletin (d) of Article 30, page 74, Regulations No. 9: "(d) Deleterious products seizable.—The Secretary of Agriculture will determine whether or not materials being used in the manufacture of process or renovated butter will be deleterious to health or unwholesome in the finished product. If any materials which have been so determined to be deleterious to health or unwholesome in the finished product are found to be present in any process or renovated butter, intended for, or in course of, exportation or shipment in interstate commerce, such process or renovated butter will be confiscated."

which the finished product is processed for sale, is bought in interstate commerce as well as in the state of Alabama and none of it is being held or offered for sale in Alabama; that of the finished product called processed or renovated butter, approximately 90% is sold outside of Alabama; that since 1902, the federal government has fully and completely occupied and preempted the field of sanitary regulations of both the raw materials and finished product as well as the plant and industry; but that, notwithstanding all of this, defendants, as state officers, purportedly acting under the authority of state laws, but in fact acting beyond them, have recently entered into and sought to occupy the field of inspection and regulation of country and packing stock butter already preempted by the United States by attempting to duplicate the work required of the federal agencies and to exercise a kind of dual and, in some respects, exclusive control of the industry; that they have seized and suspended from use large quantities of country or packing stock butter moving in interstate commerce, and in addition, by contacting small producers in Alabama, some of plaintiff's sources of raw material, have intimidated them from selling to plaintiff; that the statutes of Alabama, Agricultural Code Ala.1927, §§ 37, 71, 72, 218, 219, and § 217, as amended by Gen.

Acts Ala.1935, p. 1103, under color of which defendants are purporting to act, do not authorize the seizure of packing stock or country butter moving in interstate commerce to plaintiff's plant, they merely make it unlawful for any person within the state to manufacture for sale therein, have in his possession with intent to sell, offer or expose for sale, sell or deliver, any article of food or drugs which is adulterated or misbranded. Upon these and the further allegations that, unless restrained, defendants will continue their unlawful course of conduct to plaintiff's irreparable injury, an injunction was prayed.

It will be noted that it is not claimed that the state statutes are unconstitutional. It is, in fact, insisted that they are not, that they are limited to intrastate commerce and impose no restrictions which interfere with those fixed by Congress for interstate commerce. But the claim is that the system of inspection provided by the federal government exempts plaintiff and its products from state inspection and that state inspection in the face of such exemption is a violation of a federal right. Defendants moved to dismiss and there was a stipulation [3] intended to narrow, and in fact narrowing, the legal questions in dispute. The District Judge saying: "The plaintiff contends Congress has preempted the field

[3] The parties to this cause stipulate and agree that the legal questions in dispute between the parties are:

1. Has Congress, by the enactments relating to renovated or process butter, preempted the field of inspection and regulation of the raw material, in interstate commerce, out of which such renovated or process butter is manufactured by the plaintiff as alleged in the bill, to the exclusion of the power of the State, its officers or agents to inspect and regulate the quality of such raw material?

2. Does the inspection of packing stock butter, in interstate commerce, used by the plaintiff in the manufacture of process or renovated butter as alleged in the bill of complaint, made or directed to be made by the Secretary of Agriculture of the United States, pursuant to the Federal laws and regulations relating to renovated or process butter, have the effect in connection with said Federal laws of excluding the State of Alabama, its officers and agents, from inspecting or seizing or suspending the packing stock butter, in interstate commerce out of which renovated butter to be sold in interstate commerce as alleged in the complaint is

manufactured by the plaintiff as alleged in the complaint?

3. Under the Federal statutes, is the Secretary of Agriculture of the United States the sole judge, to the exclusion of State officers and agents, of the fitness and suitability of packing stock butter, in interstate commerce as alleged in the bill, for use by the plaintiff as raw material in the manufacture of renovated or process butter for sale in interstate commerce as alleged in the bill?

4. It is further stipulated and agreed that there is no conflict in the standards of the State of Alabama and the Federal Government, relating to the fitness or suitability of packing stock butter in interstate commerce to be used as raw material in the manufacture of renovated or process butter, and that this case be confined to the legal questions set out in paragraphs 1, 2, and 3, above.

5. It is agreed that the phrase "in interstate commerce" as used in this stipulation, shall be construed to mean "procured, transported, handled, or sold as alleged in the complaint", as the context may indicate.

of inspecting and regulating packing stock and butter * * * the defendants contend otherwise ' * * *, the chief difference between the parties is whether Congress has preempted the field of inspection and regulation of packing stock butter in Interstate Commerce to, the exclusion of the power of the state of Alabama"; and, "that the state of Alabama through its duly authorized officers may inspect the raw material known as packing stock butter, even though said raw material is in Interstate Commerce and is used by the plaintiff in the manufacture of processed or renovated butter to be sold in Interstate Commerce, and if upon inspection said packing stock butter violates any law of the state of Alabama, the same may be disposed of as provided by laws of said state.", held against plaintiff and with defendants.

Thus, there was sharply presented and decided in the court below, and there is as sharply presented for decision here, the question whether this is one of those cases in which the exercise of state police power, otherwise existing and exercisable, is prevented, not by direct congressional provision that it shall not be exercised, but by implication, from the comprehensive nature of federal statutes and regulations, that Congress has completely entered and preempted a field of regulation, and intends to exclude and has excluded the state from it.

■■■ Appellees, in limine, question our jurisdiction, insisting: (1) That the attack was upon the constitutionality of a statute and the district judge as a single judge, was without jurisdiction of the case, so that no appeal lies to this court from his decision; (2) that no substantial federal question was presented and there was no federal jurisdiction, and (3) that the suit is one against the state of Alabama and as such is forbidden by the 11th Amendment.

We reject these contentions as wholly without merit. The suit was not one for three judges. It did not attack the constitutionality of the Alabama statutes, it affirmed their constitutionality. It was not a suit against the state but one within the recognized federal jurisdiction against persons purporting to act as officers of a state and, as such, to deprive citizens of rights granted them by the federal constitution and laws. Nor can it be said of it that it did not seriously present a substantial federal question. For, if appellant is right in its contention that the federal statutes and regulations have completely occupied the field, so as to exclude the state of Alabama from the exercise of its police powers, with regard to the inspection and seizure for condemnation of country and packing stock butter, the actions of defendants under purported state authority, would be clearly in violation of a federal right and enjoinable as such.

■■ We agree with the appellees however, that the district judge was right in denying the relief prayed and dismissing the bill as without merit. For, in our opinion, nothing in the act or regulations under it, expressly purports to prevent, or impliedly purports to exclude the state from making and enforcing like regulations with those the United States lays down, for the purity and wholesomeness of ingredients to be used in the process of manufacturing food products in Alabama for sale there and in other states.

■■ Nothing in the act, the regulations, or the practices under the act, purport to expressly grant to plaintiff immunity from state seizure of food products which in the opinion of state officers, are filthy or deleterious in violation of Alabama laws. It must be admitted that the state of the authorities is such that there is much confusion to the casual and no little to the careful reader of them, as to when there is and when there is not such conflict between state and federal regulations of the same subject matter as to exclude the state from the field. This confusion is grounded in and springs in part from, the failure of some of the opinions to clearly apprehend and point out the differentiating facts in each situation. Particularly is it grounded in the failure to draw clearly enough the distinction between those cases where a complainant, subject to federal regulation of some kind, is attempting to magnify and enlarge the actual scope of the federal law, to use it as a shield against, or a cat's-paw to draw his chestnuts from the fire as to state regulations, and those where, confronted with positively inconsistent and conflicting state and federal laws, and ordered, but unable, to comply with both, complainant, because of that inability, invokes, as paramount, the protection of the federal laws. But wanting in clearness as they are, nothing in any of the authorities lends support to the view that merely because Congress has

taken cognizance of the business of making and shipping renovated or processed butter in interstate commerce, and has provided regulations for such making and shipment, a state in which the manufacturing plant is situated and in which part the product is sold, may not make and enforce regulations not inconsistent with those of the Congress to insure the purity of the product so manufactured.

Here the imagined conflict between state and federal authorities lies only in the fact that the federal authorities have failed to seize and condemn particular lots of butter which the state has found seizable. There is no complaint on the part of the federal authorities of any interference with them by the authorities of the state. It is not claimed that the state is imposing any higher or other standards than the federal government imposes, indeed it is admitted that it is not. The sole claim is that in enforcing these non-conflicting standards the state has actually seized for condemnation, packing stock which United States inspectors have not so seized. The claim in short is, that the fact of its non-seizure by the federal inspectors is in effect, a certificate or finding that the articles are non-seizable and therefore immune from state seizure.

We do not think that this will at all do. In the first place, in enacting the statute and regulations in question, the federal government was not concerned with interfering nor at all attempting to interfere, with any of the states in the matter of regulating the purity of this kind of product. The act is captioned: "An Act To make oleomargarine and other imitation dairy products subject to the laws of any State or Territory or the District of Columbia into which they are transported." In the first section of the act it is provided "all articles known as * * * process, renovated * * * butter * * * transported into any State or Territory or the District of Columbia, and remaining therein for use, consumption, sale, or storage therein, shall, upon the arrival within the limits of such State or Territory or the District of Columbia, be subject to the operation and effect of the laws in such State or Territory or the District of Columbia, enacted in the exercise of its police powers to the same extent and in the same manner as though such articles or substances had been produced in such State or Territory or the District

of Columbia, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." 21 U.S.C.A. § 25.

Now it is true that this section does not in terms refer to the ingredients, such as packing stock or country butter, from which the processed or renovated butter is manufactured. But we would, we think, be blind to both the purpose and purport of the statute, if we implied from it that the Congress, which had declared that the finished product when introduced into a state would be subject to the laws of that state, intended by the act to exclude the state of manufacture from the regulation of the ingredients used in the manufacture with the result that persons might set up as manufacturers in particular states under the protection of Congress and then import into them and use in the manufacture of food products therein, impure or unfit products, free from inspection by and regulations of, the state, designed to prevent such importation and use. On the record before us, the complaint is not as to the manner of exercise, it is as to the existence of the power. No complaint is made that the action of the state as to the particular products seized was unwarranted, capricious or unjust. Indeed, if the power to seize exists, no such complaint could be made, for the procedure provided for by the state act makes full provision for a hearing and permits the owner to fully contest the grounds of seizure. Thus, boiled down to its ultimate, the contention of the appellant comes only to this; that because and only because, Congress has enacted laws and authorized regulations under which appellant has been licensed to and has set up a manufacturing establishment in Alabama, it must be implied that it intended to authorize appellant to bring to its manufacturing establishment in that state for use in processing, completely free from inspection and seizure by the state, any kind of packing house or country butter it pleases. That in short, this conclusion must be drawn because, and only because the federal government has adopted acts and regulations under which it may inspect and seize and confiscate such products in the interest of the public health and safety.

It is not claimed that the state is attempting to seize renovated or processed butter after all the processes of manufac-

ture have ceased and its movement in interstate commerce has begun.

All that the state is purporting to interfere with here is raw material, brought into and gathered in the state for use in a state plant, in the manufacture in the state of an article of commerce, which when manufactured goes both into interstate and intrastate commerce, and does so in such condition that it is then impossible for the state or the government to detect in it the impurities existing and obvious in the packing stock.

■ The authorities on which appellant relies are all, we think, when understood in the light of later authorities, clearly distinguishable from this case. Without the aid of, Mintz v. Baldwin, 289 U.S. 346, 53 S.Ct. 611, 77 L.Ed. 1245; Pacific States Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853; Kelly v. Washington, 302 U.S. 1, 58 S.Ct. 87, 82 L.Ed. 3; South Carolina Highway Dept. v. Barnwell Bros., 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734; Townsend v. Yeomans, 301 U.S. 441, 454, 57 S.Ct. 842, 81 L.Ed. 1210; Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441; the cases of Oregon-Washington R. R. Co. v. Washington, 270 U.S. 87, 46 S.Ct. 279, 70 L.Ed 482, and Napier v. Atlantic Coastline Co., 272 U.S. 605, 606, 47 S.Ct. 207, 71 L.Ed. 432, on which plaintiff strongly relies, might give us some difficulty. When we read in Mintz v. Baldwin, supra [289 U.S. 346, 53 S.Ct. 613, 77 L.Ed. 1245], "the purpose of Congress to supersede or exclude state action against the ravages of the disease is not lightly to be inferred. The intention so to do must definitely and clearly appear," and to the same effect in the other late cases, we get our bearings and stand on firm ground again. The cases on which appellees rely are nearer in point. They establish the doctrine that state officers enforcing by seizure police regulations with regard to foods, will not be enjoined at the suit of persons complaining of them merely because there exist similar federal laws and regulations in respect to the same subject matter and there has been no federal seizure.

■ Relief from the enforcement of state police regulations upon the claim that federal regulations have preempted the field, requires much more to be shown. It must appear that there is in effect an express prohibition against state regulation or that there is such an essential conflict between state and federal laws and regulations as that compliance with the one is defiance of the other and therefore, a prohibition against state regulations must be implied. No such case is made here. It is not claimed that the state and federal standards are in conflict. It is not even claimed that the federal government has actually inspected and passed the particular products the state has seized. The claim is merely that because the federal government has the right to inspect, seize and condemn, complainant has a federal right to exemption from state government inspection and seizure. We do not think so.

The district judge was right in finding and adjudging that there was no equity in complainant's bill. His judgment is affirmed.

FOSTER, Circuit Judge (dissenting).

I disagree with the conclusions of the majority in this case for the following reasons:

In addition to other allegations referred to in the majority opinion, the bill alleges that between the 17th day of April, 1939, and the 22nd day of June, 1940, on sixteen separate occasions the state officers seized a total of 20,924 pounds of packing stock butter, which originated in whole or in part in states outside of Alabama, which had been delivered to plaintiffs' plant at Birmingham as raw material and was not being sold, offered or exposed for sale, or admitted for sale in its then condition but was being held by plaintiffs solely and exclusively for the manufacture of renovated butter in the usual course of business. The Alabama officers were acting under authority of the Alabama Agricultural Code. In State v. Cecil, 216 Ala. 391, 113 So. 254, it was held the enactment of the Agricultural Code was within the exercise of the police power of the state but the operation of the code was confined to intrastate commerce. Conceding that the Alabama regulations are practically the same as the Federal regulations I consider that Congress has pre-empted and completely occupied the field as to the manufacture of processed butter for sale and shipment in interstate commerce. The law of Alabama, enforced by state officers, should not be permitted to interfere with the Federal Statute and regulations in respect to shipments in interstate commerce. The bill was dismissed on motion without a trial on the merits.

Of course, appellant would have a remedy at law to test the validity of each seizure but where seizures have been so frequent, and no doubt will continue, if appellant operates its plant, the remedy at law would not be so complete and adequate as to oust jurisdiction in equity. I consider the judgment of the District Court should be reversed and the case remanded.