**NORTHERN STATES POWER COMPANY, Plaintiff,**

**v.**

**The STATE OF MINNESOTA, the Minnesota Pollution Control Agency and Robert Tuveson, Howard Anderson, John Borchert, Milton J. Fellows, Steve J. Gadler, Mace Harris, Homer Luick, Mrs. R. C. Nelson and F. Wayne Packard, individually and as members of the Minnesota Pollution Control Agency, and director and secretary of the Minnesota Pollution Control Agency, Defendants.**

No. 3–69–Civ–185.

United States District Court,
D. Minnesota,
Third Division.
Dec. 22, 1970.

Edward J. Schwartzbauer, William J. Hempel, Donald E. Nelson, Minneapolis, Minn., for plaintiff.

Douglas M. Head, Atty. Gen. of Minnesota, St. Paul, Minn., Sid P. Gislason, New Ulm, Minn., and G. Robert Johnson, Minneapolis, Minn., Sp. Asst. Attys. Gen., for defendants.

## MEMORANDUM & DECLARATION

DEVITT, Chief Judge.

The issue in this Declaratory Judgment Action is whether the Atomic Energy Commission's authority to regulate radioactive releases by nuclear power plants is exclusive so as to preclude state action.

The plaintiff is a public utility producing and delivering electrical power in the states of Minnesota, North Dakota, South Dakota and Wisconsin. Upon the grant of a permit from the Atomic Energy Commission (AEC) the plaintiff built an atomic energy generating plant at Monticello, Minnesota, on the Mississippi River 40 miles north of the Twin Cities of Minneapolis and St. Paul. Preliminary testing of the plant is under way. Plaintiff's application for an operating license from the AEC is pending.

The defendants are the State of Minnesota, its Pollution Control Agency, and the members and Executive Director of the Agency. Acting pursuant to a Minnesota law, the Pollution Control Agency (PCA) has issued plaintiff a permit to discharge cooling water and liquid waste into the Mississippi River in connection with operation of the Monticello Plant, but has attached to the grant thereof certain conditions governing the discharge of radioactive waste which, plaintiff contends, are practically impossible of fulfillment, at least in the foreseeable future, and at a prohibitive and unnecessary expense, and all to the detriment of the plaintiff and the consuming public. Plaintiff asserts that Minnesota is without authority to regulate the discharge of radioactive waste because this field of regulation has been preempted by the federal government. Defendants deny this. They assert that Minnesota has the right under the Tenth Amendment to the United States Constitution to protect the health of its citizens and to regulate and prevent pollution within its borders.

Defendants threaten criminal sanctions if plaintiff does not comply with the state-prescribed conditions.

The parties have filed a 24-page stipulation of facts with 21 attached exhibits.

It is stipulated that plaintiff is engaged in interstate commerce. It serves areas in adjoining states with electrical energy and participates with other power suppliers in the operation of a "grid system" which transmits power back and forth between major power systems in the United States depending upon the consumer needs in an area. The Monticello Plant will contribute electric power to this interstate system. The Monticello Plant is being built by a California-based company, the reactor vessel was furnished by an Illinois-based supplier, and nuclear fuel elements for the plant are manufactured in North Carolina. Plaintiff serves electric power to many locally-based industries extensively engaged in interstate commerce, i. e. Minnesota Mining and Manufacturing, Honeywell, Inc., and Burlington Northern Railway Company.

It is not disputed that plaintiff has complied with all federal laws and re-

quirements of the AEC in the construction and expected operation of the Monticello Plant.

The parties have agreed that the PCA requirements governing radioactive discharge from the Monticello Plant cover the same area as, and are more restrictive than, those of the AEC. It is stipulated that " * * * the plant will not be able to commence operations without violating some of the provisions" of the PCA permit and that "such situation may arise before the plant reaches full capacity, and possibly during the testing period." (Stip. ¶ 11.)

A detailed description of the means by which radioactive wastes will be produced and released under the federal laws and the regulations of the AEC is set out in the stipulation. (Stip. ¶¶ 25 through 35.)

It is agreed that an attempt by plaintiff to comply with the stricter state standards would require substantial alterations in the present plant and that " * * *· some of the equipment and facilities needed for the systems necessary to attempt compliance with the PCA permit would have to be designed and manufactured for the Monticello Plant * * *." (Stip. ¶ 42.)

By pretrial order No. 1 it was agreed that the adequacy or inadequacy of the federal and of the state regulations to protect the public health and safety is not in issue in this litigation.

By pretrial order No. 2, and by virtue of the fact stipulation of the parties, the court determined that there was no fact issue for determination under the pleadings.

Briefs have been lodged. The Attorneys General of seven states [1] and attorneys for certain members of the Southern Governors' Conference have filed briefs as amicus curiae in support of the position of the defendants. The parties have waived oral argument.

Jurisdiction is established. 28 U.S.C. §§ 1331, 1337. There is a justiciable controversy. Employment of the Declaratory Judgments Law, 28 U.S.C. § 2201, is appropriate.

▉ Under Article VI, Clause 2 of the United States Constitution the laws of the United States are "the supreme law of the land" in areas subject to congressional control. The regulation of atomic energy is a proper field for congressional control in the regulation of interstate commerce (Constitution, Article I, Sec. 8, Clause 3), providing for the common defense and security (Constitution, Article I, Sec. 8, Clauses 11–14), and with respect to United States property and territory (Constitution, Article IV, Sec. 3, Clause 1). The Congress based its enactment of the Atomic Energy Law on these constitutional provisions, 42 U.S.C. § 2011 et seq.

▉ But mere occupation of a field by the federal government does not necessarily preclude concurrent state regulation. The Congress may expressly or impliedly "preempt" the subject. It may expand or contract the scope of a state's power to regulate in an area properly subject to congressional control. Southern Pacific Co. v. Arizona ex rel. Sullivan, 325 U.S. 761, 769, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945).

▉ The question here is whether Congress has preempted the field of regulation of radioactive releases by nuclear power plants. In my view it has, and Minnesota is without authority to enforce its regulations in this field.

It should be emphasized that we are concerned here, not with the relative merits of the conflicting policies of regulation by the federal and state governments, but with the presence or absence of preemption of the field by the Congress, for as Justice Jackson has observed:

"We cannot resolve conflicts of authority by our judgment as to the wisdom or need of either conflicting policy. The compact between the states creating the Federal Government re-

---

1. Pennsylvania, Michigan, Maryland, Wisconsin, Vermont, Missouri and Virginia.

solves them as a matter of supremacy. * * * " Franklin Nat'l Bank v. People of State of New York, 347 U.S. 373, 74 S.Ct. 550, 554, 98 L.Ed. 767 (1954).

That Congress has exercised its constitutional power to preempt the field of regulation of radioactive releases by nuclear power plants is made clear by a reading of the federal statutes, the reports of the congressional committees which accompanied their enactment, and by an appraisal of the practical construction which those statutes have received in the administration of the law. The conclusion is reinforced by court decisions, by opinions of the Attorneys General of two states, and by the opinion of the General Counsel of the Atomic Energy Commission. Additionally, and assuming the absence of express congressional intent, an examination of the Atomic Energy Act of 1954 and of its 1959 Amendment in the light of decisions of the United States Supreme Court leads to a finding of an implied congressional intent to exert federal occupancy of the field to the exclusion of state authority.

The Atomic Energy Act of 1954 did not provide any clear expression of congressional intent on the subject of preemption, but the 1959 amendment did. It was enacted—

> "to clarify the respective responsibilities * * * of the States and the Commission with respect to the regulation of byproduct, source, and special nuclear materials." 42 U.S.C. § 2021 (a) (1).

and

> "to promote an orderly regulatory pattern between the Commission and State governments with respect to nuclear development and use and regulation of byproduct, source, and special nuclear materials." 42 U.S.C. § 2021 (a) (3).

After providing in § 274(b), now 42 U.S.C. § 2021(b), that the AEC may enter into agreements ceding to the states authority over "byproduct materials, source materials" and/or "special nu-clear materials in quantities not sufficient to form a critical mass," Congress further provided in § 2021(c) that—

> "No agreement entered into pursuant to subsection (b) of this section shall provide for discontinuance of any authority and the Commission shall retain authority and responsibility * * [with respect to] * * * construction and operation of any production or utilization facility."

The Committee report which accompanied the bill said:

> " * * * *

> "(b) The bill applies to some, but not all, atomic energy activities now regulated exclusively by AEC. It applies principally to radioisotopes, whose use and present licensing by AEC is widespread, but whose hazard is local and limited. Moreover, the radiation hazard from radioisotopes has similarities to that from other radiation sources already regulated by States—such as X-ray machines and radium. *Licensing and regulation of more dangerous activities—such as nuclear reactors—will remain the exclusive responsibility of the Commission.* Thus, a line is drawn between types of activities deemed appropriate for regulation by individual States at this time, and other activities where continued AEC regulation is necessary.

> " * * * *

> "3. *It is not intended to leave any room for the exercise of dual or concurrent jurisdiction by States to control radiation hazards by regulating byproduct, source, or special nuclear materials.* The intent is to have the material regulated and licensed either by the Commission, or by the State and local governments, but not by both. The bill is intended to encourage States to increase their knowledge and capacities, and to enter into agreements to assume regulatory responsibilities over such materials.

> " * * * *

> "5. *The Joint Committee believes it important to emphasize that the radia-*

*tion standards adopted by States under the agreements of this bill should either be identical or compatible with those of the Federal Government.* For this reason the committee removed the language 'to the extent feasible' in subsection g. of the original AEC bill * * *. *The committee recognizes the importance of the testimony before it by numerous witnesses of the dangers of conflicting, overlapping, and inconsistent standards in different jurisdictions, to the hinderance of industry and jeopardy of public safety."* (Emphasis added.)

S.Rep. No. 870, 86th Cong., 1st Sess. (1959) (2 U.S.C.Cong. & Adm.News, pp. 2872, 2879 (1959)).

At the time of the enactment of the 1959 amendment Congress was aware of the beginning efforts of the State of Minnesota to regulate the field when Minnesota sought to require a permit from its State Board of Health as a condition to the construction of a nuclear reactor in the States. Selected Materials on Federal-State Cooperation in the Atomic Energy Field, 86th Cong., 1st Sess. 5–6 (March 1959).

The Congress obviously acted to clarify the potential conflict by ceding certain authority to the state through turnover agreements, but specifically retaining federal (AEC) authority over "construction and operation of any production or utilization facility," 42 U.S.C. § 2021(c). It was expressly stated in the accompanying report that *licensing and regulation of nuclear reactors was to remain the exclusive responsibility of the AEC.* S.Rep. No. 870, *supra.*

This, to me, is a "clear and manifest" [2] assertion by the Congress of the exercise of its constitutionally granted authority to preempt the field of regulation of ra-

dioactive discharges from nuclear power plants.

The administrative interpretation of the law has been that states are without authority to regulate discharge of effluents from nuclear power facilities. On May 2, 1969 the AEC, pursuant to its statutory authority, 42 U.S.C. § 2201(q), issued a regulation that—

"(a) By virtue of the Atomic Energy Act of 1954, as amended, the individual States may not, in the absence of an agreement with the Atomic Energy Commission, regulate the materials described in the Act from the standpoint of radiological health and safety. Even states which have entered into agreements with the AEC lack authority to regulate the facilities described in the Act, including nuclear power plants and the discharge of effluents from such facilities, from the standpoint of radiological health and safety." 10 C.F.R. § 8.41.

Such an administrative interpretation is entitled to much weight, see cases cited in Modern Federal Practice Digest, Statutes, 217–218, and the Supreme Court has so held in preemption questions. *E. g.,* Cloverleaf Butter Co. v. Patterson, 315 U.S. 148, 828, 62 S.Ct. 491, 86 L.Ed. 754, 1223 (1942); Mintz v. Baldwin, 289 U.S. 346, 53 S.Ct. 611, 614, 77 L.Ed. 1245 (1933).

Courts in California and in New York have held that the AEC has exclusive authority to regulate the disposal of radioactive waste. Boswell v. City of Long Beach (Cal.Super.Ct.1960), 1 CCH Atomic Energy Law Reporter § 4045; Lewis v. Alexander, 4 CCH Atomic Energy Law Reporter § 16.579.

The Attorneys General of Michigan and South Dakota have held that the regulation of radioactive hazards is preempted to the federal government.[3] The

---

2. Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 147, 83 S.Ct. 1210, 1219, 10 L.Ed.2d 248 (1963).

3. Opinion of Attorney General of Michigan, Oct. 31, 1962; Opinion of Attorney

General of South Dakota, July 23, 1964. (Frank Kelly, present Attorney General of Michigan, states, in his amicus brief, p. 14, that the 1962 opinion properly may not be interpreted to support plaintiff's position in this case.)

General Counsel of the Atomic Energy Commission has issued a reasoned opinion to the same effect.[4] It has been adopted as a Commission Regulation. 10 C.F.R. § 8.4, *supra.* The staff of the Joint Committee on Atomic Energy of the United States Congress has expressed the same conclusion.[5] The Atomic Energy Committee of the New York State Bar Association has reached the same judgment, concluding that—

> " * * * it seems clear that Congress intended so to preempt, if not by the provisions of the 1954 Act, then, certainly by means of the Federal-state amendment in 1959. * * * " State Jurisdiction to Regulate Atomic Activities: Some Key Questions. (July 12, 1963.

Additionally legal scholars who have written on the subject conclude that Congress has preempted the whole field to the exclusion of the states except where turnover agreements are executed pursuant to 42 U.S.C. § 2021(b).[6]

In an exhaustive article in 60 Michigan Law Review [7] the authors, Estep and Adelman, after a review of the law and the federal licensing plan in the light of pertinent Supreme Court opinions on the subject of preemption, conclude that:

> " * * * it seems reasonably safe to assume that the Supreme Court will hold that Congress has prevented any state or local government from requiring a person, who is licensed or otherwise authorized by the Commission, to obtain prior state or local permission to operate if the granting or denying of that permission is predicated upon an independent analysis or standards of radiation health and safety." p. 1064.

But the defendants and the amici urge that radioactive waste releases to the environment fall squarely within the traditional concept of the state police power, that under the Tenth Amendment to the United States Constitution, Minnesota has the responsibility to protect the health and safety of its citizens, that Congress has not clearly preempted the field of regulation and, absent a clear expression of preemption, the principles enunciated by the United States Supreme Court in Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963) govern the disposition of the issue here.

That case involved the preemptive intent of Congress in regulating the marketing of avocados vis-a-vis a California statute which also regulated them, although by a different test and for a different purpose.

The Court held that it could not find the California statute invalid absent "an unambiguous congressional mandate" to preempt this field of regulation. Mr. Justice Brennan, speaking for the Court, said "The maturity of avocados seems to be an inherently unlikely candidate for exclusive federal regulation." 83 S.Ct. at p. 1218.

Not so here. The Congress expressed its "unambiguous mandate" to preempt the field when it enacted what is now 42 U.S.C. § 2021(c), providing that the AEC was to retain "authority and responsibility * * * [with respect to] * * * construction and *operation* of any production or utilization facility" (emphasis added). And while the maturity of avocados might not be a likely candidate for exclusive federal regulation, certainly the field of atomic energy is not only a likely, but a logical, candidate for exclusive fed-

4. Opinion of General Counsel Joseph F. Hennessey, March 14, 1969, F.R.Doc. #69–5296.

5. Summary Legal Analysis of Federal and State Jurisdiction to Regulate Atomic Energy, April, 1969.

6. Estep and Adelman, State Control of Radiation Hazards: An Inter-Governmental Relations Problem, 60 Mich.L.Rev. 41 (1961); Cavers, State Responsibility in the Regulation of Atomic Reactors, 50 Ky.L.J. 29, 29–32 (1961); The author of a note in 68 Mich.L.Rev. 1294 concludes that the Supreme Court "probably" would find preemption.

7. See note 6, *supra.*

eral regulation as a reflection upon its magnitude and importance, an examination of its history, and a reading of the Atomic Energy Act so poignantly illustrates. Moreover, in *Avocado Growers,* the regulations of the state and federal government applied to *different* subject matters—the federal regulation applied to *production,* the state regulation governed *marketing* of avocados. In our case the federal and state regulations seek to regulate the *same* field, to wit, the discharge of radioactive releases.

But, if, as urged, doubt exists as to the expressed preemptive intent of the Congress, the cannons of construction many times stated by the Supreme Court in such cases strongly favor the conclusion that the disputed field of regulation has been preempted.

■ Thus the admitted pervasiveness of federal supervision over the entire field of atomic energy by the statutes and regulations is a strong factor favoring a finding of preemption. Bethlehem Steel Co. v. New York State Labor Relations Bd., 330 U.S. 767, 772, 67 S.Ct. 1026, 91 L.Ed. 1234 (1947); La Crosse Telephone Corp. v. Wisconsin Employment Relations Bd., 336 U.S. 18, 69 S.Ct. 379, 93 L.Ed. 463 (1949); Garner v. Teamsters etc. Union, 346 U.S. 485, 74 S.Ct. 161, 98 L. Ed. 228 (1953); Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546 (1955); Oregon-Washington R. & Nav. Co. v. Washington, 270 U.S. 87, 46 S.Ct. 279, 70 L.Ed. 482 (1926); Penn. R. R. Co. v. Public Service Commission, 250 U.S. 566, 40 S.Ct. 36, 63 L. Ed. 1142 (1919); Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432 (1926); Cloverleaf Butter Co. v. Patterson, 315 U.S. 148, 828, 62 S.Ct. 491, 86 L.Ed. 754, 1223 (1941); Hines v. Davidowitz, 312 U.S. 52, 66, 61 S.Ct. 399, 85 L.Ed. 581 (1941); and Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956).

The fact that the Congress has *directed,* and not merely *authorized,* the AEC to effect a comprehensive licensing program for atomic energy activity is a strong indication of preemptive intent. International Union, United Automobile etc. Workers v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958): Oregon-Washington R. & Nav. Co. v. Washington, *supra;* and Welch v. New Hampshire, 306 U.S. 79, 59 S.Ct. 438, 83 L.Ed. 500 (1939).

The fact that diverse state laws occasioning contradictory or overlapping regulations vis-a-vis federal regulations in the same field would frustrate the congressional purpose to achieve uniformity, as here, has been viewed by the Supreme Court as a factor favoring preemption. Hill v. Florida ex rel. Watson, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782; Hines v. Davidowitz, *supra;* Cloverleaf Butter Co. v. Patterson, *supra;* Napier v. Atlantic Coast Line R. Co., *supra;* Amalgamated Ass'n of Street, etc., Employees v. Wisconsin Employment Relations Bd., 340 U.S. 383, 71 S.Ct. 359, 95 L.Ed. 364 (1951); and International Union of United Automobile etc. Workers v. O'Brien, 339 U.S. 454, 70 S.Ct. 781, 94 L.Ed. 978 (1950).

Several expressions of the Supreme Court in the field of labor regulations support the conclusion that state health and safety requirements at variance with, or more restrictive than, the federal requirements would be viewed by the Court as an obstacle to the achievement of the congressionally expressed objectives of the federal law and hence invalid. Hill v. Florida, *supra;* Automobile Workers v. O'Brien, *supra;* and Amalgamated Ass'n of Street, etc., Employees v. Wisconsin Employment Relations Bd., *supra.*

More specifically, it is likely that the Supreme Court would hold, as it did in Hill v. Florida, *supra,* that the attempted state regulation here would be "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the Atomic Energy Act and thus that the Congress in-

tended to preempt the field. Hill v. Florida, 65 S.Ct. 1373 at 1375.

It may be true, as urged, that prudence dictates subscription to stricter standards against radiation hazards, such as those promulgated by the PCA, in the interest of insuring a maximum of safety for the public, but the adequacy or inadequacy of the federal and of the state regulations is not in issue here. Our province is limited to determining the legal question of preemption. The United States Congress has the power to preempt a field of activity within its constitutional authority. It has done that here. It also has the power to relinquish that authority to the states. If the exercise of federal authority in this field is inadequate or unwise, recourse lies with the AEC to raise its standards or with the Congress to relinquish its authority to the states.

I am satisfied from an examination of the statutes and of the congressional reports which accompanied their enactment that the Congress has expressly and effectively manifested its intent to preempt the disputed field of regulation; and in light of the practical construction afforded the administration of the law, the interpretation it has received from official legal authorities, the evaluation of the issue by legal scholars, and the inference to be drawn from previous decisions of the Supreme Court in those cases where it established standards for determining the implied intent of the Congress to preempt a field of regulation that, if called upon to do so, the Supreme Court of the United States would hold that the Atomic Energy Commission's authority to regulate radioactive releases by nuclear power plants is exclusive.

Under authority of 28 U.S.C. § 2201 the Court finds, and declares, that the State of Minnesota is without authority to regulate the release of radioactive discharges from plaintiff's Monticello Nuclear Power Plant, and this declaration shall have the force and effect of a final judgment.