Argued April 19, affirmed September 24, 1929.

STATE *v.* ALBERT C. BURROUGHS.

(280 Pac. 653.)

For appellant there was a brief over the name of *Messrs. Winter & Maguire,* with an oral argument by *Mr. Robert F. Maguire.*

For respondent there was a brief over the names of *Mr. Stanley Myers,* District Attorney, and *Mr. C. W. Kirk,* Deputy District Attorney, with an oral argument by *Mr. Kirk.*

BROWN, J.—The defendant was accused of practicing medicine without a license. The charging part of the indictment reads:

"The said Albert C. Burroughs, on the first day of March, A. D., 1928, in the county of Multnomah and State of Oregon, then and there being, did then and there, unlawfully and willfully practice medicine, without having first obtained a license from the Board of Medical Examiners of the State of Oregon entitling him to so practice, and did then and there unlawfully, for a compensation directly or indirectly receive(d), or to be received, offer and undertake to prescribe, give and administer for the use of one Frank Boothby certain drugs and medicines, a more particular description of which drugs and medicines is to this grand jury unknown, and did then and there offer and undertake to diagnose, cure and treat a certain bodily infirmity and disease of the said Frank Boothby, contrary to the statutes in such cases made and provided, and against the peace and dignity of the state of Oregon."

The prosecution is based upon Chapter 452, General Laws of Oregon, 1927, which act is designed to regulate the practice of medicine and surgery in Oregon. Section 13 of the act prohibits the practice of medicine or surgery in this state without having first secured a license from the state board of medical examiners therefor. As to the meaning and scope of the term "practice of medicine and surgery" as therein used, that section provides:

"A person shall be regarded as practicing medicine and surgery within the meaning of this act if he shall either (1) advertise, or hold out to the public, or represent in any manner that he is authorized to

practice medicine or surgery in this state; or (2) for compensation directly or indirectly received or to be received, offer or undertake to prescribe, give or administer, any drug or medicine for the use of any other person; or (3) offer or undertake to perform any surgical operation upon any person; or (4) offer or undertake to diagnose, cure or treat in any manner any disease, illness, pain, wound, fracture, infirmity, deformity, defect or abnormal physical or mental condition of any person; or (5) who shall append the letters 'M. D.' or 'M. B.' to his name, or use the words 'Doctor,' or 'Physician,' or 'Surgeon,' or 'Professor,' or 'Healer,' or 'Specialist,' or any abbreviation or combination thereof, or any letters or words of similar import in connection with his name, or any trade name in which he is interested, in the conduct of any occupation or profession pertaining to the diagnosis or treatment of human diseases or conditions herein mentioned; or (6) act as the representative or agent of any person in doing any of the things mentioned in subdivisions (1), (2), (3), (4) or (5) of this section. Any person who violates any of the provisions of this section shall be guilty of a misdemeanor. In any prosecution for the violation of any of the provisions of this section it shall be sufficient to sustain a conviction to show a single act of conduct in violation of any of the provisions of this section, and it shall not be necessary to show a general course of such conduct.''

As to exemptions, Section 14 provides:

''This act shall not be construed to affect or prevent the following: (1) The practice of medicine and surgery in this state by any commissioned medical officer serving in the United States army, navy or public health service, or any full-time medical officer on duty with the United States Veterans' Bureau, while such commissioned or full-time medical officer is engaged in the performance of the actual duties prescribed for him by the laws and regulations of the United States; or (2) the practice of medicine and

surgery by a duly appointed member of the resident staff, or by an interne while actually serving as such, in any legally incorporated hospital in this state recognized as standard by the order of the state board of medical examiners; or (3) the practice of medicine and surgery by anyone duly licensed so to practice in a neighboring state, who resides near the boundary of this state, and whose practice extends into this state, but who does not maintain an office or appoint a place to meet patients or receive calls within this state; or (4) the meeting in this state of any legally licensed practitioner of medicine and surgery of any other state or country with a duly licensed practitioner of medicine and surgery in this state, for consultation; or (5) the furnishing of medical or surgical assistance in cases of emergency requiring immediate attention; or (6) the domestic administration of family remedies; or (7) the practice authorized by section 8598, Oregon Laws, by osteopathic physicians and surgeons; or (8) the practice of dentistry, pharmacy, optometry, chiropractic, naturopathy, chiropody or cosmetic therapy, by any person legally authorized by this state; and provided, that nothing contained in subdivision 5 of section 14 shall be construed as an inhibition against the use of the words 'Doctor' or 'Specialist,' or any abbreviation or combination thereof, or any letters or words of similar import by any person duly licensed to practice optometry within the state of Oregon; or (9) the practice of the religion of persons who endeavor to prevent or cure disease or suffering by prayer or other spiritual means in accordance with the tenets of any church; nor shall anything in this act be construed so as to interfere in any manner with the individual's right to select or employ the practitioner or mode of treatment of his choice, or to interfere with the right of the person so employed to give the treatment so chosen; provided, however, that sanitary laws, rules and regulations are complied with; or (10) the selling of lenses, artificial eyes, limbs or surgical instruments, or other apparatus or appliances

of a similar character; or (11) the selling of drugs, medicines and chemicals by licensed pharmacists in accordance with the laws of this state; or (12) professional or domestic nursing; or (13) the sale by duly licensed vendors or manufacturers of proprietary medicine, ointments, salves or cosmetics in the original packages bearing duly certified and accepted trade-marks or the sale of mineral waters or mineral substances in their native state or condition or dissolved in pure water; or (14) the sale or rent or use for hire of any device or appliance, the sale of which is not prohibited by the laws of Oregon, or the laws of the United States; or (15) the practice of physiotherapy, electrotherapy or hydrotherapy carried on by or under the direction of duly licensed practitioners of medicine and surgery or osteopathy and surgery or chiropractic, or any other method of practice which may hereafter become legalized in this state."

As a result of the trial the defendant was convicted and sentenced to pay a fine of $250. From the judgment entered in accordance with the verdict, he appeals.

■ The defendant attacks the indictment upon the ground that it fails to negative the exemptions enumerated in section 14 set out above. We cannot follow counsel. The indictment herein contains the only necessary negation. That it fulfilled all requirements when it alleged that the defendant was unlawfully practicing medicine without first having obtained a license therefor is obvious from a study of other cases of like import.

The early case of *State* v. *Tamler*, 19 Or. 528 (25 Pac. 71, 9 L. R. A. 853), involved the enforcement of a statute regulating the sale of intoxicating liquor. That statute denounced the sale of spirituous, vinous or malt liquor without first having obtained a license therefor, and, in a subsequent section, provided:

"Nothing in this act shall be so construed as to apply in any manner to incorporated towns and cities of this state": Laws 1889, p. 9, § 11.

Upon conviction Tamler appealed and it was urged in his behalf that the indictment was insufficient, in that it failed to allege that the sale therein charged was not made within an incorporated town or city. In commenting upon the defendant's contention Mr. Justice R. S. BEAN, speaking for the court, wrote:

"The general rule on this subject is, that where the exception or proviso is stated in the enacting clause, it is necessary to negative them in order that the description of the offense may in all respects correspond with the statute; but where such exception or proviso is contained in another or subsequent section of the statute, it is a matter of defense and need not be negatived in the indictment."

This proposition of law has been declared over and over again by the court. See *State* v. *Rosasco,* 103 Or. 343, 353 (205 Pac. 290), and Oregon cases there collated; *State* v. *He Quan Chan,* 113 Or. 168 (232 Pac. 619). See, also, 2 Bishop's Crim. Proc., §§ 631, 633; 1 Wharton's Crim. Proc., §§ 288, 290; Clark's Crim. Proc., § 98.

The indictment in the cause at issue contains every element of the offense. It advises the defendant of the charge he is required to meet, and protects him from a second prosecution for the same offense: *State* v. *Dormitzer,* 123 Or. 165 (261 Pac. 426).

■ The defendant assails the statute as unconstitutional, in that it is in conflict with the Fourteenth Amendment to the Constitution of the United States, and with Section 20, Article I, of the Oregon Constitution. This contention is answered in the case of *State* v. *Joseph Smith,* 127 Or. 680 (273 Pac. 343).

See the authorities there cited, including the leading case of *State* v. *Randolph,* 23 Or. 74 (31 Pac. 201, 37 Am. St. Rep. 655, 17 L. R. A. 470).

■ The defendant complains that the court overruled his motion for an order requiring the state to elect between the charge that he gave and administered drugs for compensation, and that he offered and undertook to diagnose, cure and treat a bodily infirmity and disease. There was no error in this ruling: *State* v. *Humphrey,* 63 Or. 540 (128 Pac. 824), and local citations there noted; *State* v. *Laundy,* 103 Or. 443 (204 Pac. 958, 206 Pac. 290); *State* v. *Rowen,* 104 Or. 1 (200 Pac. 901).

The serious questions in this case arise out of the modification by the court of some of the defendant's requested instructions, one of which is as follows:

"The laws of Oregon do not attempt to prescribe or to limit the kind of treatment which may be given for the purpose of alleviating disease or suffering, nor is it necessary that a given treatment be that required by any school of medicine or healing. Every person has the right to hold his own ideas upon those subjects, and to have any kind of a treatment that he desires administered to him."

This instruction was given, with the proviso that the treatment "is administered by one authorized so to do"; and the defendant reserved an exception to the instruction as modified.

Defendant also excepted to the following instruction given by the court:

"Did he (defendant) practice medicine as defined in the law which I have just read to you, and as charged in the indictment, without first having obtained a license so to do? That is the question. Those are the questions that are before you for your determination today. If he did not, under all the

evidence in the case, and you are not satisfied beyond a reasonable doubt that he practiced medicine as defined to you in the law of the state of Oregon, and as set forth in the indictment, then, of course, your verdict must be a verdict of not guilty. But, if he did practice medicine without a license, as defined to you in the law which I have read to you, and as outlined in the indictment which I read to you, if he did so practice medicine, then it is your duty to return a verdict of guilty.''

Defendant contends that this instruction is contrary to section 14 hereinbefore set out, and therefore erroneous.

■ Except as provided in Section 14 thereof, the law involved in this case denounces the ''practice of medicine or surgery'' in this state without being licensed so to do by the state board of medical examiners. Defendant argues that he is exempted from prosecution by that portion of the last-named section which reads:

''Nor shall anything in this act be construed so as to interfere in any manner with the individual's right to select or employ the practitioner or mode of treatment of his choice, or to interfere with the rights of the person so employed to give the treatment so chosen; provided, however, that sanitary laws, rules and regulations are complied with.''

This argument is not grounded in reason. The statute in question must be read and applied in the light of its purpose. One of the reasons for its enactment by the law-making power was to serve the common welfare by protecting the public against ignorance and the wiles of the quack. Read in the glow of legislative intent, this provision does not eliminate the defendant from its compass. He treated his patient by administering medicine to him.

The fact, if it be a fact, that the pills were harmless in character cannot avail him in this cause. He has violated the provisions of the law, and he cannot escape the penalty by invoking the aid of the exception above noted.

On the subject of construction of statutes, we take the following from 25 R. C. L., "Statutes," Section 285:

"It is a fundamental rule of statutory construction that not only should the intention of the lawmaker be deduced from a view of the whole statute and of its every material part, but statutes *in pari materia* should be construed together."

. In the same section the author says:

"The object of the rule is to ascertain and carry into effect the intention of the legislature, and it proceeds upon the supposition that the several statutes relating to one subject were governed by one spirit and policy, and were intended to be consistent and harmonious in their several parts and provisions."

An application of this wholesome doctrine to the case before us, with particular reference to the two sections of our statute set out above, renders their meaning clear beyond peradventure.

■ The facts bearing upon the question as to whether or not the defendant did, in fact, practice medicine in violation of our statute appear to be about as follows:

Frank Boothby was stricken with a paralytic stroke in November, 1927, and died on March 3, 1928. Among the claims presented to his estate for payment was the claim of Dr. Albert C. Burroughs, defendant herein, in the amount of $250, for services rendered to decedent, which claim was paid from the funds of the estate on April 3, 1928.

The testimony shows that the defendant had no license to practice medicine in the State of Oregon. He was not registered as a physician and surgeon as is required by our statute. Despite this fact it is charged, and there is testimony in support of the allegation, that he, from time to time, undertook to prescribe medicine for the relief and cure of the afflicted.

Turning to the testimony of Jean E. Dow, a cousin of Boothby and a trained nurse by profession, we find that during his illness she called on him at the Weaver Hotel in Portland from time to time to see if there was anything she could do for him; that, upon one of her visits, the defendant called while she was there and explained to her that he was Dr. Burroughs. As to what then took place, she testified:

"He took off his coat and rolled up his sleeves and said he was going to give a manipulation of the solar plexus. * * He did a manipulation over the pit of the stomach, or the epigastrium * * . I asked Dr. Burroughs from what school he was a graduate, and Dr. Burroughs said, 'I am not a graduate from any school.' He said, 'I had a preceptor.' * * After the treatment was finished and Dr. Burroughs was preparing to leave, he turned to the patient and he said, 'You are taking your medicine, are you?' And the patient was unable to talk, and he smiled and motioned to a small bottle of homeopathic pills that was situated by the bedside, and I said, 'What is it he is taking?' And Dr. Burroughs said, 'That is medicine I am giving him.' * * And I said, 'Isn't he taking digitalis any more?' And he said, 'No, he is not taking that any more. He is taking this medicine.' Then I asked him what the name of it was and he gave me the name, which I have forgotten. It was a homeopathic medicine with which I am unfamiliar.''

Mrs. Edith Parker, another cousin of Boothby, testified that when he suffered the paralytic stroke he was taken to Emanuel Hospital, and was later removed to the Weaver Hotel; that on the 27th or 28th of January following, Dr. Burroughs was called, and he at once stated that he did not want the patient to go to a hospital, but suggested to witness that she take him into her home for treatment and care, which she did; that on the evening Boothby was taken to her home, the doctor called and left with her a small bottle of medicine, with instructions that she administer it to the patient. She testified that she gave the medicine to her cousin "until it was all gone, then he (the doctor) gave me another bottle." As to the specific instructions for giving the medicine, she testified:

"He told me to give him the medicine every hour, and even if he should be asleep I should put a tablet in his mouth and hold his lips closed until it dissolved, so he would be sure to get it."

The foregoing testimony is peculiarly persuasive. And, from a careful study of the entire record, we are satisfied that there is some valid evidence in support of every essential allegation of the indictment herein.

This case is affirmed.                    AFFIRMED.

COSHOW, C. J., and BEAN and BELT, JJ., concur.