STATE v. ASA DOWE LOVELACE.

(Filed 19 November, 1947.)

**1. Constitutional Law §§ 13, 31—**

Regulations relating to the importation of cattle into this State, promulgated by the State Board of Health under statutory authority for the purpose of control of brucellosis or Bang's disease, if reasonable in their scope and incidence and not in conflict with federal regulations or statutes already pre-empting the field, are constitutional and valid.

**2. Same—**

The provision in the regulations promulgated by the State Board of Health under authority of G. S., 106-307.4, limiting the exception to the requirement of a health certificate for cattle imported into the State solely to those consigned to a slaughter house, is reasonable and valid.

**3. Constitutional Law § 13—**

A person who transports cattle from out the State to a livestock market operated in this State without a health certificate for such animals is guilty of violating the regulations promulgated by the State Board of Health under authority of G. S., 106-307.4, notwithstanding that the animals are to be segregated at the livestock market and sold by the market for slaughtering. The exception to the requirement of health certificates for cattle brought into this State relates solely to cattle transported immediately to a slaughtering house and the exclusion of mediate delivery thereto is reasonable and valid.

**4. Statutes § 8—**

A remedial statute operating under the police power will be construed in the light of the evil sought to be remedied.

**5. Constitutional Law § 13—**

The regulations of the State Board of Health prohibiting the importation of cattle into the State without health certificates unless the cattle are "consigned" to a recognized slaughtering house approved and designated by the State Veterinarian applies whether the cattle are transported into the State by common carrier or brought into the State by the owner in his truck. If the exception relates only to transportation by common carrier, such owner does not come within the exception.

STATE's appeal from *Sink, J.,* at September, 1947, Extra Term, of MECKLENBURG.

The defendant was indicted on a warrant charging him with violating Section 106-307.6 taken in connection with 106-307.4 of the General Statutes, denouncing as a misdemeanor a violation of any "rule or regulation established by the State Board of Agriculture" with respect to the subjects embraced in Article 34 of Chapter 106, by infraction of regulation No. 4 of the State Board of Agriculture relating to brucellosis or Bang's disease.

The regulation requires that cattle brought into the State "shall be accompanied by a health certificate issued by an accredited veterinarian approved by the proper livestock sanitary official of the state of origin." The certificate must state that the cattle are free from any evidence of an infectious or transmissible disease and have not been recently exposed to any communicable, infectious or parasitic disease. With specific reference to Bang's disease it requires that the certificate shall also manifest the brucellosis status of the herd from which the imported cattle originated and the result of brucellosis tests; and shall contain as to each animal imported "the names and addresses of the owner, consignor, and consignee" and that the officially approved health certificate shall be forwarded to the State Veterinarian before arrival of cattle at destination. The regulation, however, is subject to the exception contained in Section 17 which reads as follows:

> "Immediate slaughter. Apparently healthy cattle of strictly slaughter type to be used only for immediate slaughter may be imported into the state without a health certificate or tuberculin or brucellosis test, provided such cattle are consigned for immediate slaughter to a recognized slaughtering establishment or slaughtering center that is approved and designated by the State Veterinarian. Such cattle shall be slaughtered within ten (10) days after arrival at destination, except when the ten-day period is extended by special permit from the State Veterinarian."

Upon the trial in the Superior Court the jury rendered a special verdict, finding substantially the following facts:

The defendant, a resident of South Carolina living near the border of the North Carolina-South Carolina State line, crossed that line with four head of slaughter type cattle on his truck and after getting into Mecklenburg County was stopped by a quarantine inspector who inquired where he was taking the cattle. The defendant replied that he was taking them to the Morris Live Stock Market for sale, which market is located some distance out of the City of Charlotte. Lovelace had no health certificate covering the cattle and the Morris Live Stock Market is not a recognized slaughtering establishment and no cattle are slaughtered at or by said market. Thereupon, the quarantine inspector arrested the

defendant for the violation of the regulation above set out; and after arranging for bond the defendant took the cattle back across the State line to his home, where they remained.

The Morris Live Stock Market to which the defendant was taking the cattle is a licensed public livestock market operated pursuant to North Carolina General Statutes 106-406 to 106-418, observing health regulations relating to the sale of livestock in public livestock markets promulgated by the North Carolina Department of Agriculture and that pursuant to the same regulations slaughter type cattle are segregated from milk or breeding cattle; and that at the public sale of this type of cattle there are representatives present from recognized slaughtering establishments, in addition to other parties who may and do bid at said public auction for said slaughter type cattle.

That with respect to said cattle the Morris Live Stock Market acts only as agent for the seller in the sale of the cattle and that they are sold for immediate slaughter or resale for immediate slaughter. The cattle in question were apparently healthy.

The jury predicated a verdict of guilty or not guilty, accordingly as the court might find the law, G. S., 1-201. Thereupon the court, being of the opinion that the defendant was not guilty under the facts of the special verdict, pronounced judgment in accordance therewith, from which the State appealed (G. S., 15-179), assigning error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Henry E. Fisher and Carl Horn, Jr., for defendant, appellee.*

SEAWELL, J. As bearing on the importance of the case under review, counsel for the State call our attention to certain historical, scientific and statistical facts concerning Brucellosis and its prevention in North Carolina, some of which may be within the judicial knowledge, while others may be informative; but they illustrate the necessity of adequate regulations for the protection of animal husbandry in the prevention of this disease, and, indeed, the health of the inhabitants of the State in the consumption, as food, of animal products affected by the Brucellosis germ. Some of the suggestions are enlightening as to the terms used in the regulations challenged and the comments made upon them.

Brucellosis, or Bang's Disease (deriving its name from two scientists studying in this field), as it applies to the bovine type of bacillus, is described as being both infectious and contagious. It is spread from animal to animal by the consumption of feed and water soiled or contaminated with brucellosis organisms. By consumption the germs are carried through the blood vessels to the various parts of the animal's

body. The udders of cows are affected, and discharge the germs with the milk. The disease is transmitted to man through·the drinking of the milk and contact with the animals, and is known, when so caused, as undulant fever, not usually fatal, but disabling. It can only be eliminated by eradication at the source.

In cattle the disease results in premature birth, lower productivity, and lower birth rate. It is generally understood that the only effective method of eliminating the disease is by slaughter of the animals found infected, and it is often the case that the whole herd must be disposed of.

It is the present view of science that consumers of meat, as food, from animals affected by Brucellosis suffer no ill effects, since the meat is cooked; hence the exception to the requirement of a health certificate for lawful importation of beef cattle discussed *infra,* when done under the conditions prescribed in the statute.

It is pointed out that North Carolina is the only State in the nation accredited with the Federal Government with respect to Bang's disease, which means that the State has an incidence of less than one per cent (1%); and it is further stated that this pre-eminence has cost the State approximately $2,000,000, expended in control and eradication of the disease.

As we understand the contentions of the appellee, he does not question the authority of the State Board of Agriculture under the cited statute to make reasonable regulations respecting the importation of cattle to prevent the introduction and spread of Brucellosis or Bang's disease. He does contend that the transaction for which he is indicted comes within the spirit, if not the letter, of the exception offered by Section 17 of the regulations permitting slaughter type cattle to be brought in for immediate slaughter without requiring a health certificate; and that if Section 17 is construed to give the regulations a more drastic coverage it is invalid as imposing an unconstitutional burden on interstate commerce.

Regulations comparable to those challenged in the present appeal have been in force in many states for several years, and have been sustained in numerous court decisions, both state and federal. When reasonable in their scope and incidence, and not in conflict with federal statutes or regulations already pre-empting the field, they are not, either directly or mediately violative of the federal Constitution. *Oregon-Washington R. & Nav. Co. v. State of Washington,* 270 U. S., 87, 70 L. Ed., 482; *Mintz v. Baldwin,* 77 L. Ed., 1245; *Campoamor v. State Live Stock Board,* 182 So., 277; *S. v. So. Ry. Co.,* 141 N. C., 846, 54 S. E., 294; *S. v. Hodges,* 180 N. C., 751, 105 S. E.; 417; *Asbell v. Kansas,* 209 U. S., 251, 52 L. Ed., 778; *Evans v. Chicago & N. W. R. Co.,* 122 N. W. (Minn.), 876; *McSween v. State Live Stock Board,* 122 So., 239; *Rasmussen v. Idaho,* 181 U. S., 198, 45 L. Ed., 820; *S. v. Garner,* 158 N. C., 630, 74 S. E., 458; *A. C. L. R. Co. v. Bahnsen,* 300 Fed., 233.

The regulations above referred to as existing in many of the states of the Union are largely identical in phraseology and are said to follow the form of the model adopted by the United States Live Stock Sanitary Association, upon which our regulations are modeled. They contain, as does our law, provisions for the admission of slaughter type cattle, for immediate slaughter, without certificate of health, but upon conditions intended to safeguard the relaxation of the rule so as to allow traffic of this sort, yet obviate its manifest dangers. There is no substantial difference in principle between the North Carolina regulations, modeled from the same original, and the others referred to as having court approval which would diminish the authority of the cited cases—and particularly the *Mintz case*—as applied to the case at bar, and to the regulations involved. Section 17 of the State regulations differs from most of those mentioned in that it routes the cattle, such as are admitted without health certificate, immediately to a slaughter house, or slaughtering center, to which they must be consigned, instead of deviously to a livestock market, however the latter may be subject to inspection or sanitary supervision. This is a difference in degree—not in *kind*—a further guaranty the Commission thought necessary to prevent unexamined and possibly infected cattle from passing from hand to hand after importation, spreading infection as they go during the 10-day interval, with the probability of untraceable merger with healthy herds. Simply stated, where there is no health certificate the regulation recognizes but one stage in the traffic—from the importer to the slaughter pen. This greater precaution could hardly be held to unduly burden interstate commerce: Here, as in all remedial statutes operating under the police power, a cardinal rule of construction (which also often serves as a test of constitutionality, *Morgan's, Louisiana, etc., R., etc., Co. v. Bd. of Health,* 118 U. S., 455, 30 L. Ed., 237), is that the law must be interpreted in the light of the evil sought to be remedied, and its reasonable adaption to the desired end. We are dealing with the Federal Constitution, it is true, but conceded that the State may, under its police power, act in the premises at all, the principle is the same.

In *Mintz, supra,* it is said: "Much weight is to be given to the practical interpretation of the Act by the Federal Department through its acquiescence in the enforcement of state measures to suppress Bang's disease. This case is governed by the principle on which rests the decision in *Asbell v. Kansas,* 209 U. S., 251, 52 L. Ed., 778, 28 S. Ct., 485, 14 Ann. Cas., 1101."

We are not impressed with the plea that Section 17, having used the word "consigned," is inapplicable to the transaction undertaken by the defendant, or delivery in person. If it applies only to carriers, the defendant is out of the exception but under the law. If, as we apprehend it, it is intended to apply to operations such as the special verdict dis-

closes, and we think the terms employed in the regulation may be so construed, the defendant failed to observe either the letter or the spirit of the law. He was under a duty which he could not delegate to be vicariously performed by the Morris Live Stock Market, or by them in turn redelegated to an auction customer. The duty began at the State line; and the importation of his cattle was accompanied neither by the certificate required, nor evidence of their consignment to, or intention to deliver to, a recognized or approved slaughter house, which would have brought him within the exception provided in Section 17 of the regulations.

The State's appeal must, therefore, be sustained, and the action of the court below on the special verdict must be reversed. The cause is remanded for judgment in accordance with this opinion.

Reversed.