GEORGE COMPTON DRAUGHON v. R. E. MADDOX; JAMES DEWEY FOUST, ADMINISTRATOR OF THE ESTATE OF D. F. FOUST, AND ANNIE M. FOUST, ADMINISTRATRIX OF THE ESTATE OF D. F. FOUST, D.B.A. D. F. FOUST LIVESTOCK AUCTION MARKET; STOP AND SHOP STORE, INC.

(Filed 20 May, 1953.)

1. **Animals § 1 ½ —**

Agreed facts that a cow, unaccompanied by a health certificate, was sold on a public livestock market regulated by staute, and that the purchaser signed a certificate that the animal was for immediate slaughter at a named abattoir in accordance with law, *are held* sufficient to support a finding that the cow was sold for immediate slaughter and for human consumption.

2. **Same: Food § 16—**

Where a cow is sold for immediate slaughter for human consumption there is an implied warranty that the animal is fit for this purpose, and when it is condemned by the health authorities immediately after slaughter because of a latent disease, the purchaser may recover on the implied warranty in the seller's action for the purchase price.

APPEAL by plaintiff from *Morris, J.,* at November Term, 1952, of CUMBERLAND.

Civil action to recover purchase price of a certain cow sold by plaintiff on the D. F. Foust Livestock Auction Market.

The parties stipulated the facts, and waived a trial by jury, and consented that the judge presiding decide the issues.

The stipulated facts are as follows:

"On March 24, 1952, the plaintiff, George Compton Draughon, purchased a certain 5 or 6 year old holstein cow from Bailey Evans' farm in Cumberland County, took it to his own farm and thereafter, on March 25, 1952, offered it for sale at public auction at the D. F. Foust Livestock Market near Greensboro. On March 26, 1952 the cow in question was slaughtered at the Curtis Brothers, Inc. Abattoir near Greensboro, examined and condemned as unfit for human consumption on the same date by the Guilford County Veterinarian, Dr. D. L. Cooley, upon discovery that the cow had advanced traumatic pericarditis. The high bidder at the sale was the Stop and Shop Store, Inc., at a price of $286.15. Upon condemnation of the cow, the defendant, D. F. Foust Livestock Market stopped payment on check issued in payment of the same, and both the defendant Livestock Market and defendant Stop and Shop Store, Inc. have refused payment for said cow.

"The D. F. Foust Livestock Market is a public livestock market regulated by the statutes of North Carolina. No written or verbal representations were made by the plaintiff either to the Stop and Shop Store, Inc. or the other defendants concerning the condition or health of the cow in question. To all visual appearances the cow in question was healthy. The plaintiff did not know of any defects. He had fed and watered the cow. The bidders at the Livestock Market auctions have opportunity to examine the cows auctioned off before auction sale. In practice, when a sickly looking or 'slow cow' is being auctioned off, the auctioneer states in effect 'Look this cow over carefully for you buy at your own risk' but no such statement was made on the sale of the cow in question. Both the plaintiff and the defendant R. E. Maddox for Stop and Shop Store, Inc. have traded on the Foust Market for several years and are both experienced livestock men. Before the cow in question was moved from the Livestock Market to the Abattoir the Stop and Shop Store, Inc. signed the following certificate: 'This is to certify that I have this date purchased and removed the cattle described by this bill of sale for immediate slaughter at Curtis Brothers Abattoir and will handle said animals in accordance with the law.' "

"No statement was made by either plaintiff or the defendants to the other, nor was there any discussion of the purposes for which the cow was sold or purchased.

"The disease for which this cow was condemned is a disease which would not ordinarily be detected without expert examination by a veterinarian."

The court stated, and answered the issues as follows:

"1. Was there an implied warranty in the sale of the cow that it was fit for human consumption? Answer: Yes.

"2. Was the warranty breached? Answer: Yes.

"3. In what amount, if any, is plaintiff entitled to recover of the defendants? Answer: ..........."

And in accordance therewith the presiding judge entered judgment that plaintiff take nothing by this action, and that defendants go hence without day and recover their costs in this action to be taxed by the clerk.

To the signing and entry of the judgment plaintiff excepts, and appeals to Supreme Court, and assigns error.

*Thomas H. Williams for plaintiff, appellant.*

*Smith, Sapp, Moore & Smith and Henry L. Anderson for defendants, appellees.*

WINBORNE, J. Defendants base their defense to this action of plaintiff upon the theory that the cow in question, having been sold at a public livestock market, regulated by statute, under the circumstances detailed by the stipulated facts, was sold for immediate slaughter, and for human consumption, G.S. 106-409, and, that, hence, a sale so conducted under such circumstances created an implied warranty by plaintiff, the seller, that the cow was fit for the purpose. There is no suggestion of intentional wrongdoing on the part of any of the parties to the action. Apparently, the condition of the cow was a latent defect,—not subject to detection by observation or superficial examination.

In this connection this Court held in the case of *McConnell v. Jones,* 228 N.C. 218, 44 S.E. 2d 876, in opinion by *Devin, J.,* now *Chief Justice,* that "Although, under the maxim of the common law *caveat emptor,* there is no implied warranty as to quality in the sale of personal property, the seller is nevertheless held to the duty of furnishing property in compliance with the contract, and such as shall be capable of being used for the purpose intended." Supporting decisions of this Court are cited.

And in *Davis v. Radford,* 233 N.C. 283, 63 S.E. 2d 822, 24 A.L.R. 2d 906, *Devin, J.,* again writing, it is said that "A person who sells an article for use in connection with food for human consumption is held in law to have impliedly warranted that it is wholesome, and fit for that purpose."

This is therefore the basic question: Are the facts stipulated sufficient to support finding that the cow was sold for immediate slaughter? When read in connection with the provisions of the statute pertaining to public livestock markets, Article 35 of Chapter 106 of the General Statutes, particularly G.S. 106-409, the facts appear to be sufficient.

It is agreed that in North Carolina a public livestock market, such as that on which the cow in question was sold, is regulated by the public livestock statute. And in Section 106-409, as amended by 1949 Session Laws, Chapter 997, Sec. 2, it is provided that: "No cattle except those for immediate slaughter shall be removed from any public livestock market unless they are accompanied by a health certificate issued by a qualified veterinarian, said veterinarian to be approved by the commissioner of agriculture, showing that such animals are apparently healthy and come directly from a herd all of which animals in the herd have passed a negative test for Bang's disease within twelve months prior to the date of sale, or that said animal or animals have passed a satisfactory test for Bang's disease made within thirty days prior to sale and such other tests and vaccinations as the commissioner of agriculture may require. Every such animal shall be identified by an approved numbered ear tag and description."

Moreover, this section of the statute also provides that: "All cattle removed from any public livestock market for immediate slaughter shall be identified in an approved manner and the person removing same shall sign a form in duplicate showing number of cattle, their description, where same are to be slaughtered or resold for slaughter. Said cattle shall be resold only to a recognized slaughter plant or the agent of same, or to a person, firm or corporation that handles cattle for immediate slaughter only, and said cattle shall be used for immediate slaughter only. No market operator shall allow the removal of any cattle from a market in violation of this section."

It may be inferred that the requirements of the statute were observed, and complied with. Too, the plaintiff and the purchaser had traded on this particular livestock market for several years, and were experienced livestock men. And it may also be inferred that when the cow was offered for sale, unaccompanied by a health certificate, required by the statute, she was offered for sale for immediate slaughter. Furthermore, this inference is supported by the form signed by the purchaser, as required by the statute, and by the fact that the cow was actually slaughtered the next day. Indeed, in *S. v. Lovelace,* 228 N.C. 186, 45 S.E. 2d 48, *Seawell, J.,* referring to Bang's disease among cattle in interstate commerce, pertinently stated: "Where there is no health certificate the regulation recognizes but one stage in the traffic,—from the importer to the slaughter pen."

Due consideration has been given to all authorities cited by appellant, and they are found to be distinguishable from case in hand.

The judgment below is

Affirmed.